Julian A. Hertz, J.
Respondents, brothers, were each placed with agencies on October 3, 1975, as the disposition in their individual PINS (persons in need of supervision) cases. On March 31, 1977, supplementary proceedings to extend placement were commenced.
The mother of the respondents, attorneys and agency workers have all agreed on a plan which was presented to this court at the hearing held on June 6, 1977. Said plan requests the return of Donny to his mother’s home on August 31, 1977 and the extension for one year of Randy’s placement. In reasoning which appears somewhat circuitous, it is urged that Donny be returned home because he has not adequately cooperated with or benefited from placement whereas Randy has adjusted well and, therefore, should remain in placement. In particular, it is claimed that the authority image created in a placement setting and, perhaps, the supervision which Randy would receive would assist him in graduating high school. Additionally,, the mother testified at the June 6 hearing that she couldn’t afford to take both children home at one time. When the court suggested that perhaps she seek supplemental assistance, Mrs. J. replied that she had once obtained it, but had run into a lot of problems on that account.
The court, at the hearing, while granting the application as to Donny candidly expressed its preliminary view that the need for extension of Randy’s placement had not been demonstrated. Upon inquiry into the factors which are to be considered by the court on such an application (both in terms of an agency’s request for or acceptance of continued placement) the court was surprised to learn that no standards exist in this regard.
It continues to be my view that the State and the taxpayers thereof should not, particularly in a PINS or delinquency proceeding, be required to maintain a youngster merely on the basis that he will function more effectively under institutional, as opposed to parental, supervision. (Cf. Matter of Pannone, 67 Misc 2d 516.)
*894 If the mother of Randy, for one reason or another, feels that she cannot have her son home with her then she should voluntarily surrender him to the Commissioner of Social Services — the court, in the guise of a PINS proceeding, should not be asked to lend its imprimatur to an abdication of parental responsibility.
In any event, whether placement is sought in a proceeding under article 7 or on a voluntarily basis, an inquiry should be made by the commissioner as to the parents’ ability to contribute to the cost of maintenance of her child by the State. (See, e.g., Social Services Law, § 398, subd 3, par [c]; subd 6, pars [d], [e]; Family Ct Act, § 235; cf. Matter of Eagen v Robb, 72 Misc 2d 364.)
The issue raised in this proceeding has caused this court to reflect upon the laxity with which the State has accepted its substitution as the provider for children who are unable or are not welcome to remain in their homes. The last cited statutory provisions, as well as subdivision 1 of section 528 of the Executive Law mandate that an investigation of the financial circumstances of the parents of delinquent and neglected children, as well as children who become public charges, be conducted in each instance. The court is not aware of any proceeding before it in which such an investigation was made. If the governments of this city and of the State are truly interested in curbing fiscal excesses, then it is suggested that precise standards for the acceptance, by the State or city, of the custody of children be implemented and that some method be devised through which the mandates of section 398 of the Social Services Law, section 235 of the Family Court Act and section 528 of the Executive Law will be carried out.*
The court takes this opportunity to caution against the expensive ramifications attendant upon the "rubber stamp” aspect of frequent applications such as that in the instant case. While a voluntary placement, sans judicial proceedings, might prompt administrative intervention and inquiry, the tendency may well be for interested parties to go the court route. Here, in this busy court, where time must be severely allocated, the tendency is to grant applications on which no party before the court raises any issue or objection. Thence *895 forth, administrative personnel would most probably be reluctant to raise questions, as such might be viewed as interference with the Judge’s order of placement or extension of placement. For this reason, it is questioned whether uncontested applications should be brought before a judicial officer, particularly where the Judge does not appear to be asked to exercise any genuine judicial function.
Somewhat more precisely stated the court is unable to ascertain the existence of any issue to be herein decided. All that has been submitted is an uncontested statement that all concerned join in seeking an extension of placement. If the application is properly before the court, approval amounts to a rubber stamp. If there is an issue, no one raises it. Should the court search out the question of justification or parental contribution, or perhaps, some unseen issue? That is the status of this matter. There are no guidelines or statutory prerequisites. In sum, it is clear that the Legislature should consider hereafter referring matters such as this one to an administrative agency.
Accordingly, it is ordered, that the application for extension of placement of Randy J. beyond August 31, 1977, is hereby denied.

 Reference is made to subdivision 1 of section 528 of the Executive Law, because a similar troubling circumstance appears to be raised by its provisions, to wit, ignorance of the mandate to explore continued parental financial responsibility for the maintenance of children who are placed with the Division for Youth.